**AKERMAN LLP**
Michael L. Gallion (State Bar No. 189128)
*michael.gallion@akerman.com*
David Van Pelt (State Bar No. 163690)
*david.vanpelt@akerman.com*
Kanika D. Corley (State Bar No. 223607)
*kanika.corley@akerman.com*
601 West Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile:  (213) 627-6342

Attorneys for Plaintiffs
GA TELESIS, LLC and CONSTANT AVIATION, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| GA TELESIS, LLC, a Delaware limited liability corporation, and CONSTANT AVIATION, LLC, a Delaware limited liability company,<br><br>        Plaintiffs,<br><br>v.<br><br>SALESFORCE.COM, INC., a Delaware corporation, and DOES 1-10, inclusive,<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br>1.   **VIOLATION OF DEFEND TRADE SECRETS ACT**<br>2.   **VIOLATION OF CALIFORNIA UNIFORM TRADE SECRET ACT**<br>3.   **BREACH OF CONTRACT**<br>4.   **BREACH OF CONTRACT**<br>5.   **UNFAIR COMPETITION UNDER LANHAM ACT §43(a)**<br><br>**DEMAND FOR JURY TRIAL** |

*(left margin, vertical text)* **AKERMAN LLP**  601 WEST FIFTH  STREET, SUITE 300  LOS ANGELES, CALIFORNIA 90071  TEL.: (213) 688-9500 – FAX: (213) 627-6342

CASE NO.

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    PARTIES ................................................................................................... 3

III.   JURISDICTION, VENUE & INTRADISTRICT ASSIGNMENT ................ 4

IV.   FACTUAL ALLEGATIONS ..................................................................... 5

     A.    Scope of Defendant's Business and Self-Identified Market
          Challenges ................................................................................... 5

     B.    GA Telesis and its Agreements with Defendant .................................. 6

     C.    Constant Aviation and Its Agreement with Defendant ....................... 11

     D.    Defendant Creates "Use Cases" .......................................................... 13

          1)    "Constant Aviation Use Case" ................................................... 14

          2)    "GA Telesis and Constant Aviation Use Cases" ....................... 15

COUNT I - VIOLATION OF DEFEND TRADE SECRETS ACT ...................... 18

COUNT II - VIOLATION OF CAL. UNIFORM TRADE SECRET ACT .......... 21

COUNT III - BREACH OF CONTRACT ........................................................ 24

COUNT IV - BREACH OF CONTRACT ........................................................ 29

COUNT V - UNFAIR COMPETITION .......................................................... 32

PRAYER FOR RELIEF .................................................................................. 38

DEMAND FOR JURY TRIAL ....................................................................... 39

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**COMPLAINT BY GA TELESIS, LLC AND CONSTANT AVIATION, LLC**

56018798;1

Plaintiffs GA Telesis, LLC ("GA Telesis") and Constant Aviation, LLC ("Constant") (GA Telesis and Constant collectively "Plaintiffs"), by and through their attorneys, and for their Complaint against Defendant Salesforce.com, Inc. ("Defendant"), hereby allege as follows:

## I.  **INTRODUCTION**

1.  Pursuant to the terms of Defendant's Master Subscription Agreement[1] and the Non-Disclosure Agreements (collectively, the "Agreements"), Defendant agrees to protect the confidential and proprietary information of its clients, and further agrees not to provide its clients' confidential and proprietary information to any third-party, unless compelled by law or unless authorized by its clients to do so.[2]

2.  Notwithstanding the express terms of the Agreements, Defendant has engaged in the unfair and deceptive business practice of taking its clients' confidential and proprietary information, manipulating that information, creating inaccurate "use cases" and then giving to third-parties and other potential purchasers those "use cases" on which they rely to make purchasing decisions. Defendant gives the "use cases" to third parties and other potential purchasers as a means of demonstrating for them the purported "successful" implementation of Defendant's products and services as applied to the businesses of others in similar industries.

3.  Based on the experiences of these Plaintiffs, the "use cases" are being presented in violation of the parties' Agreements, they are being created and used in contravention of Defendant's clients' intellectual property rights, and, the "use cases" contain information that Defendant knows to be false.

4.  Specifically, in some instances, the "use cases" state that Defendant's clients are using Defendant's products and services that are not actually being used. In

---

[1] See, salesforce "Master Subscription Agreement" Current version available at https://www.salesforce.com/content/dam/web/en_us/www/documents/legal/salesforce MSA.pdf.

[2] Master Subscription Agreement at Clause 2.2.

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

other instances, the "use cases" state that the utilization of Defendant's products and services have been successfully implemented, leading to positive and quantifiable results, which is not true.

5.     In still other instances, the "use cases" contain the tradenames and logos of Defendant's clients, which leads the recipient of the "use cases" to believe the information contained therein is not only accurate but that the disclosure of the information has been authorized, sponsored and/or endorsed, none of which is true.

6.     In addition, some "use cases" also present trade secret information to third parties and potential purchasers of Defendant's products and services absent the consent or authorization of the trade secret owner.

7.     Since Defendant creates each "use case," Defendant knows the false information contained therein and knows that Defendant lacks authorization to display and transmit its clients' information in the manner presented.

8.     In furtherance of Defendant's unfair and deceptive business practice, Defendant withholds from its clients the very existence of the "use cases." As a result, at no time during the pendency of Defendant's unfair and deceptive business practice could Defendant's clients (including without limitation to these Plaintiffs) have known to protect themselves from Defendant's improper and unauthorized disclosures of information and breaches of the Agreements.

9.     Defendant's conduct has been brazen, willful and malicious. Each time Defendant engages in these unfair and deceptive business practices, Defendant acts in callous disregard for the rights of its clients.

10.     Defendant's conduct constitutes unlawful breaches of Plaintiffs' intellectual property rights, misappropriation of trade secret and breaches of the parties' written Agreements, each of which require Defendant not to disclose Plaintiffs' confidential and proprietary information to any third-party unless compelled by law to do so or unless Defendant received Plaintiffs' prior authorization.

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56018798;1

11.     In light of Defendant's unexcused and unlawful conduct, Plaintiffs bring this action to recover any actual losses sustained, reasonable royalties for Defendant's unauthorized uses of Plaintiffs' confidential and proprietary information and intellectual property, to recover Defendant's profits and any other unjust enrichment, for an order directing and enjoining – through a preliminary and permanent injunction – Defendant from utilizing Plaintiffs' property in the manner described herein, for an order directing Defendant to file with the Court a certification under oath of compliance with the injunction, for an order awarding exemplary and punitive damages, and to recover attorneys' fees and costs of suit.

## II.   PARTIES

12.     Plaintiff GA Telesis is a Delaware limited liability company with its principal place of business in Fort Lauderdale, Florida. GA Telesis is a leader in integrated aviation services. GA Telesis owns all of its copyrights, trademarks, patents, trade secrets, proprietary and confidential information infringed or misappropriated by Defendant.

13.     Plaintiff Constant is a Delaware limited liability company with its principal place of business in Cleveland, Ohio. Constant is in the business of, among other things, providing service and parts to maintain, repair and overhaul business and general aviation aircraft and engines. Constant owns all of its copyrights, trademarks, patents, trade secrets, proprietary and confidential information infringed or misappropriated by Defendant. Constant is an affiliated business of Flexjet, LLC, a Delaware limited liability company and Sentient Jet, LLC, a Delaware limited liability company, both of which (in addition to Constant) are signatories of a Salesforce Master Subscription Agreement.

14.     Defendant Salesforce.com, Inc., is a Delaware corporation with its principal place of business in San Francisco, California.

/ / /

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

15.     Plaintiffs are presently unaware of the true names and capacities, whether individual, associate, corporate or otherwise of Defendant DOES 1 through 10, or any of them, and therefore sue them by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true names and capacities of such fictitiously named Defendants when the same has been ascertained. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as DOE is legally responsible in some manner for the acts, omissions and events alleged herein and has proximately caused damages and injury to Plaintiffs as herein alleged.

16.     Plaintiffs are informed and believe and based thereon allege, that at all times herein mentioned, each defendant named herein as DOES 1 through 10, was and now is the agent, servant, employee, representative and/or alter ego of Defendant and, in doing the things hereinafter mentioned, was acting within the scope of his, her or its authority as such agent, servant, employee and/or representative with the permission and consent of Defendant.

17.     The information contained in this Complaint, and presented on behalf of GA Telesis and Constant, demonstrates the existence of a right to relief that arises out of the same transaction or occurrence where a single common question of law and fact exists. Therefore, Plaintiffs jointly bring this action against Defendant.

### III.    JURISDICTION, VENUE & INTRADISTRICT ASSIGNMENT

18.     This Court has subject matter jurisdiction over the federal trade secret claim pursuant to 18 U.S.C. § 1836 et seq. and 28 U.S.C. §§ 1331. This Court has jurisdiction over the unfair competition claim brought under the Lanham Act pursuant to 28 U.S.C.A. § 1338(a). This Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

19.     As set forth above, the named Defendant resides in this Judicial District. In addition, a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this Judicial District. Moreover, the operative agreements

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

between the parties expressly require that any litigation that ensues occur within San Francisco, California. Venue therefore lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

20.     A substantial part of the events giving rise to the claims alleged in this Complaint occurred in the City and County of San Francisco. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action will be assigned on a districtwide basis.

## IV.   FACTUAL ALLEGATIONS

### A.   Scope of Defendant's Business and Self-Identified Market Challenges

21.     According to Defendant's Form 10-K filing,[3]   Defendant is a leading provider of enterprise cloud computing solutions, with a focus on customer relationship management, or CRM. Defendant's mission is to help its customers transform themselves into customer-centric companies by empowering them to connect with their customers in entirely new ways. Defendant describes its strategic objective as delivering solutions that transform how companies sell, service, market and innovate to connect with their customers in a whole new way.[4]

22.     Within its 10-K filing, Defendant reports that the market for enterprise applications and platform services is highly and intensely competitive, rapidly evolving and fragmented, and subject to changing technology, low barriers to entry, shifting customer needs and frequent introductions of new products and services. Defendant competes primarily with generalized platforms and vendors of packaged business software, as well as companies offering enterprise apps, including CRM, collaboration and business intelligence software. Defendant also competes with internally developed

---

[3] salesforce.com, inc., Annual Report (Form 10-K) (Fiscal year ended January 31, 2016), available at, https://www.sec.gov/Archives/edgar/data/1108524/000110852416000053/crm-2016131x10k.htm; see also, Annual Report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 10-K) (Fiscal year ended January 31, 2020), available at, https://sec.report/Document/0001108524-20-000014/.

[4] *Id.*

**COMPLAINT BY GA TELESIS, LLC AND CONSTANT AVIATION, LLC**

56018798;1

AKERMAN LLP

601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

apps and Defendant faces competition from established software vendors who may develop toolsets and products that allow customers to build new apps that run on the customers' current infrastructure or as hosted services.[5]

23.     Defendant acknowledges that many of its current and potential competitors enjoy substantial competitive advantages, such as greater name recognition, longer operating histories, significant installed bases, broader geographic scope and larger marketing budgets, as well as substantially greater financial, technical and other resources. In addition, many of Defendant's current and potential competitors have established marketing relationships and access to larger customer bases, and have major distribution agreements with consultants, system integrators and resellers. In addition, Defendant experiences competition from smaller, younger competitors that may be more agile in responding to customers' demands. As a result, Defendant's competitors may be able to respond quicker and more effectively to new or changing opportunities, technologies, standards or customer requirements. Furthermore, because of these advantages, potential customers might select competitive products and services in lieu of purchasing Defendant's services. For all of these reasons, Defendant reports that it may not be able to compete successfully against its current and future competitors.[6]

**B.     GA Telesis and its Agreements with Defendant**

24.     GA Telesis is one of the world's leading commercial aerospace firms. GA Telesis specializes in sales, trading, repair, leasing and financing of commercial aircraft and engines and related parts and components, as well as maintaining one of the world's largest replacement aerospace component inventory networks. GA Telesis serves the world's largest airlines supporting Airbus, Boeing, Bombardier, Douglas and Embraer aircraft  as well as CFM International, General Electric, Honeywell, International Aero Engine, Pratt & Whitney and Rolls-Royce engines and replacement components.

---

[5] *Id.*

[6] *Id.*

25.     A critical component of the services GA Telesis offers its elite clientele is its specialized maintenance, repair and overhaul ("MRO") services.

26.     Following years of research and development, GA Telesis successfully created the "GATES Production System" for use in MRO operations of integrated aviation services.  The GATES Production System differs from information known and used generally in the industry. The GATES Production System is a method, technique and process used to provide specialized services to aircraft lessors, air carriers and cargo operators. The benefits of the GATES Production System include increased flexibility, competitive cost efficiencies and high-quality services relative to initial inspection, disassembly, detail inspection, repair/marshalling, final assembly and preservation.

27.     Before entering into any written agreements with Defendant, the GATES Production System had been reduced to tangible medium.

28.     GA Telesis does not make its methods, techniques and processes regarding the GATES Production System available to competitors and requires that any who have been granted access to the GATES Production System hold the information in strict confidence.

29.     The GATES Production System is a trade secret. It derives its independent economic value from not being generally known to or readily accessible by the public.

30.     GA Telesis has undertaken reasonable efforts to maintain the secrecy of the GATES Production System. GA Telesis has at all times maintained stringent security measures to preserve the secrecy of the GATES Production System trade secret. For example, GA Telesis restricts access to confidential and proprietary trade secret information to only those who need to know. That is, employees working on projects unrelated to MRO have not had and do not have access to GA Telesis' schematics or other categories of confidential and proprietary information, and access to the information the GATES Production System has at all times required passwords for access. Computers, tablets, and cell phones provided to GA Telesis' employees are

/ / /

AKERMAN LLP

601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

COMPLAINT BY GA TELESIS, LLC AND CONSTANT AVIATION, LLC

56018798;1

password protected, and subject to other security measures. In addition, GA Telesis secures its physical facilities by restricting access and then monitoring actual access with security cameras and guards.

31.    GA Telesis requires all employees, contractors, consultants, vendors and manufacturers to sign confidentiality agreements before any confidential or proprietary trade secret information concerning the GATES Production System is disclosed to them. Every outside vendor and manufacturer that has received confidential and proprietary trade secret information related to the GATES Production System has executed at least one written non-disclosure agreement. 31. Moreover, no single vendor has full knowledge of all aspects of the proprietary GATES Production System.

32.    Due to these security measures, GA Telesis' confidential and proprietary trade secret information relative to the GATES Production System is not available for others in the aircraft engine MRO industry – or any other industry – to use.

33.    GA Telesis created a synopsis of its proprietary GATES Production System to be used as an educational tool, only.

34.    On October 5, 2017, GA Telesis contracted with Defendant to provide GA Telesis with a project management tool. To facilitate Defendant's comprehension of GA Telesis' needs, GA Telesis provided a copy of the synopsized GATES Production System to Defendant. The copy expressly states: "GA Telesis proprietary document – cannot be reproduced or transmitted without written authorization."

35.    Before providing the GATES Production System synopsis to Defendant, on or about August 10, 2017, GA Telesis and Defendant entered into a Mutual Non-Disclosure Agreement. The significance of the Mutual Non-Disclosure Agreement was clear to Defendant; it authorized Defendant to receive access to detailed information regarding the GATES Production System and the information that renders it a trade secret, and it required that Defendant maintain it in secret, not to be disclosed. Attached

/ / /

/ / /

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    hereto as Exhibit A is a true and correct copy of the Mutual Non-Disclosure Agreement

2    between GA Telesis and Defendant.

3        36.    Pursuant to the terms of the Mutual Non-Disclosure Agreement, GA

4    Telesis and Defendant agreed, inter alia, as follows:

**2.      Non-Use and Nondisclosure Obligations.  Recipient shall not, in any way, use or disclose any Confidential Information of Discloser except** as necessary in connection with the Business Purpose or **with Discloser's prior written consent**.  Recipient shall not reverse engineer, disassemble or decompile any software or tangible objects embodying any Confidential Information of Discloser. **Recipient shall not disclose or otherwise make available any Confidential Information of Discloser to anyone** except those of its employees, attorneys, agents and consultants who need to know the Confidential Information in connection with the Business Purpose and who have previously agreed to be bound by confidentiality obligations no less stringent than those in this Agreement. **Each party shall safeguard all Confidential Information of the other party with at least the same degree of care (but no less than reasonable care) as it uses to safeguard its own Confidential Information of like kind.** Neither party shall disclose any information to the other party in violation of any confidentiality obligations to, or proprietary rights of, any third party. **Recipient's obligations under this Agreement with respect to any Confidential Information shall remain in effect (a) in the case of Confidential Information which constitutes a trade secret** within the meaning of applicable law, for as long as such Confidential Information remains a trade secret, or (b) for five (5) years from the date it first received such Confidential Information hereunder. (Emphasis added)

…

**7.      Injunctive Relief.**  The parties acknowledge that **a breach** of any of the provisions contained in this Agreement **may result in irreparable and continuing harm** for which there will be no adequate remedy at law and that **the non-breaching party shall be entitled to seek injunctive relief**

AKERMAN LLP

601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

9

1
2
3

**and/or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate).** (Emphasis added).

4
5
6
7
8
9

37.    The Master Subscription Agreement that GA Telesis and Defendant entered into also requires Defendant to maintain the confidences of GA Telesis as to its confidential, proprietary and trade secret information. The Master Subscription Agreement bears the designation "Confidential." Attached hereto as Exhibit B is a true and correct copy of the Master Subscription Agreement between GA Telesis and Defendant.

10
11
12

38.    The terms of the Master Subscription Agreement include representations that Defendant will protect its client's confidential, proprietary and trade secret information. Specifically, Defendant agreed:

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.2    **Protection of Customer Data. [salesforce.com, inc.] will maintain administrative, physical, and technical safeguards for protection of the security, confidentiality and integrity of Customer Data,** as described in the Documentation. Those safeguards will include, but will not be limited to, measures for preventing access, use, modification or disclosure of Customer Data by [salesforce.com, inc.] personnel except (a) to provide the Services and prevent or address service or technical problems, (b) as compelled by law in accordance with the "Confidentiality: Compelled Disclosure" section below, or (c) as expressly permitted in writing by Customer. The terms of the data processing addendum at http://www.sfdcstatic.com/assets/pdf/misc/data-processing-addendum.pdf (**"DPA"**) are hereby incorporated by reference and shall apply to the extent Customer Data includes Personal Data, as defined in the DPA. To the extent Personal Data from the European Economic Area (EEA) and Switzerland are processed by [salesforce.com, inc.], its Processor Binding Corporate Rule and/or the Standard Contractual Clauses, Customer and its applicable

AKERMAN LLP

601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Affiliates are each the data exporter, and Customer's execution of this Agreement, and an applicable Affiliate's execution of an Order Form, shall be treated as its execution of the Standard Contractual Clauses and appendices.

…

7.2 **Protection of Confidential Information. The Receiving Party will use the same degree of care that it uses to protect the confidentiality of its own confidential information of like kind (but not less than reasonable care) to** (i) not use any Confidential Information of the Disclosing Party for any purpose outside the scope of this is Agreement and (ii) except as otherwise authorized by the Disclosing Party in writing, **limit access to Confidential Information of the Disclosing Party** to those of its and its Affiliates' employees and contractors who need that access for purposes consistent with this Agreement and who have signed confidentiality agreements with the Receiving Party containing protections not materially less protective of the Confidential Information than those herein. Neither party will disclose the terms of this Agreement or any Order Form to any third party other than its Affiliates, legal counsel and accountants without the other party's prior written consent, provided that a party that makes any such disclosure to its Affiliate, legal counsel or accounts will remain responsible for such Affiliate's, legal counsel's or accountant's compliance with this "Confidentiality" section. (Emphasis added)

## C.   Constant Aviation and Its Agreement with Defendant

39.   Constant is a leading MRO in the U.S., expert in aircraft maintenance and with an unsurpassed commitment to meeting the changing needs of the airline industry. Constant specializes in airframe and engine maintenance, major repairs, avionics, interiors, and paint. In addition, it offers mobile response services through its AOG division. With its expertise in a comprehensive spectrum of business jet airframes, / / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Constant created a one-stop shop experience for customers' business and private jet needs.

40.     As of May 28, 2020, Constant completed its 17th 7,500-cycle inspection of the Bombardier Challenger 300, more than any other MRO in the world. Constant's experience makes it the only MRO capable of performing this comprehensive inspection and maintenance process with maximum efficiency and minimum aircraft downtime.

41.     Following years of research and development, Constant successfully created and has become a leading provider of specialized MRO services for use in the aviation industry, including avionics, interiors, composites, accessories and non-destructive testing services. The specifics of Constant's MRO services are confidential and proprietary. In addition, they are beneficial in that they aid in increasing competitive cost efficiencies and the provision of high-quality services relative to initial inspection, disassembly, detail inspection, repair/marshalling, final assembly and preservation.

42.     Constant does not make its respective methods, techniques and processes available to third parties and requires that any who have been granted access hold the information in strict confidence.

43.     On or about March 31, 2017, Constant and Defendant entered into a Master Subscription Agreement for the term April 1, 2017 through December 31, 2019. Attached hereto as Exhibit C is a true and correct copy of the electronic order form signed by Constant binding it to the terms of Defendant's Master Subscription Agreement, as indicated on page 5 providing, "This Order Form is governed by the terms of the salesforce.com Master Subscription Agreement found at https://www.salesforce.com/company/msa.jsp."

/ / /

/ / /

/ / /

/ / /

44.     Pursuant to the terms of the Master Subscription Agreement, Defendant agreed to protect and safeguard Constant's confidential information. Specifically, Defendant agreed:

> 7.2     Protection of Confidential Information. […] The Receiving Party will use the same degree of care that it uses to protect the confidentiality of its own confidential information of like kind (but not less than reasonable care) to (i) not use any Confidential Information of the Disclosing Party for any purpose outside the scope of this Agreement and (ii) except as otherwise authorized by the Disclosing Party in writing, limit access to Confidential Information of the Disclosing Party to those of its and its Affiliates' employees and contractors who need that access for purposes consistent with this Agreement and who have signed confidentiality agreements with the Receiving Party containing protections not materially less protective of the Confidential Information than those herein. Neither party will disclose the terms of this Agreement or any Order Form to any third party other than its Affiliates, legal counsel and accountants without the other party's prior written consent, provided that a party that makes any such disclosure to its Affiliate, legal counsel or accountants will remain responsible for such Affiliate's, legal counsel's or accountant's compliance with this "Confidentiality" section. […] (Emphasis added)

### D.     Defendant Creates "Use Cases"

45.     In its 10-K filings, Defendant reported that, for a multitude of reasons, it may not be able to compete successfully against its current and future competitors.[7]  In an apparent effort to combat the market challenges described throughout Defendant's Annual Reports, Plaintiffs are informed and believe and based thereon allege that

---

[7] *See* salesforce.com,, inc., 2016 Annual Report (Form 10-K), *supra*, at page 13; and see salesforce.com, inc. 2020 Annual Report, *supra*, at page 6.

13

56018798;1

1    Defendant creates false and misleading "use cases" containing proprietary information

2    misappropriated from its existing customers, and sends the "use cases" to unsuspecting

3    potential purchasers in an effort to obtain new business.

4        46.    The "use cases" Defendant creates are based on false and misleading

5    information. Plaintiffs are informed and believe and based thereon allege that Defendant

6    relies on the "use cases" as a means of attracting new business. However, Defendant

7    neither obtains prior authorization or consent from the clients on whose business the

8    "use cases" are purportedly based, nor does Defendant share the "use cases" with the

9    clients whose interests have been affected. This all occurs notwithstanding the fact that

10   within the controlling Agreements, Defendant expressly acknowledges that it cannot

11   and will not share any confidential and proprietary information unless compelled by

12   law or without prior authorization.

13       1)    **"Constant Aviation Use Case"**

14       47.    On October 22, 2019, Defendant attempted to sell a new product or service

15   to GA Telesis. In furtherance of Defendant's efforts, Defendant transmitted the

16   following communication to GA Telesis:

17       **Subject:** Constant Aviation Use Case

18       Hello! […]

19       Please let me know if I should inquirer (*sic*) about a visit to Constant Aviation

20       discuss their use case.

21       [Constant Aviation is] using Sales, Service and FSL in **CARE (Constant**

22       **Aviation Rotable Exchange) see attached .pdf**

23       They are now evaluating CPQ and a community too.

24       […] (Emphasis in original)

25       48.    Accompanying the October 22, 2019 email was a one-page .pdf document

26   – the "Constant Aviation Use Case" – containing representations about products and

27   services Constant used and information about the results Defendant's products and

28   / / /

---

14

56018798;1

AKERMAN LLP

601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

services achieved. In addition, the .pdf document used Constant's trade name, Constant's registered trademark "CARE" and portions of Constant's registered design mark all next to detailed descriptions of Constant's internal business issues.

49.     Upon receipt, GA Telesis believed it had received truthful and accurate information from Defendant about the effectiveness of Defendant's products and services as reported within the "Constant Aviation Use Case."

50.     In November 2020, Constant first learned that Defendant created a "use case" utilizing aspects of its confidential and proprietary business information and intellectual property, and then transmitted it to GA Telesis. Constant had no prior knowledge of the "use case," did not consent to its creation and did not authorize Defendant's disclosure of the information in the "use case."

51.     Upon review of the information in the "Constant Aviation Use Case," it was apparent to Constant that the information was misleading, deceptive and inaccurate as it conveyed to GA Telesis false information about the scope of products and services Constant used, and conveyed false information about the purported effectiveness of Defendant's products and services on Constant's business, which among other issues, negatively impacts Constant's goodwill.

**2)     "GA Telesis and Constant Aviation Use Cases"**

52.     The following week, on October 30, 2019, in a nearly two-page email, Defendant transmitted to Plaintiffs' direct competitor descriptions of and links to Plaintiffs' confidential and proprietary information, as well as aspects of trade secret information regarding the GATES Production System. In a display of callous disregard for Plaintiffs' rights, in that email, Defendant wrote:

> … we are including a link to a relevant MRO video along with
> GA Telesis and Constant Aviation use cases which you may
> find directly relevant. There are more use cases available, but
> we are not allowed to use their names. (Email from Salesforce

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1          Account Executive to Barfield, Inc., dated October 30, 2019,

2          Subject: Salesforce – Barfield: Follow Up).

3       53.    Defendant sent the email to Barfield, Inc., a direct competitor of both GA Telesis and Constant. The nearly two-page email from Defendant includes multiple references to Plaintiffs' confidential and proprietary information as well as an acknowledgment that Defendant had no right to make the disclosure. GA Telesis is informed and believes and based on that belief alleges that the disclosure to Barfield, Inc. includes information about the GATES Production System.

54.    On or about October 30, 2019, GA Telesis learned of Defendant's disclosure; during November 2020, Constant first learned of Plaintiff's disclosure. At the time they learned of the disclosure, neither GA Telesis nor Constant had reason to believe an earlier unauthorized disclosure had occurred.

55.    Upon learning of the unauthorized and improper disclosures to Barfield, Inc., GA Telesis contacted Defendant. Defendant admitted that the disclosures occurred and did not offer any legal justification. In spite of Plaintiffs' repeated requests, however, Defendant has failed to provide any adequate remedy to address the harm caused by its conduct.

56.    Following the discovery osf the "Constant Aviation Use Case" and the "GA Telesis and Constant Aviation Use Cases," Plaintiffs are informed and believe and based on that information and belief allege that Defendant's disclosures of their confidential and proprietary information are not isolated incidents. Rather, they are evidence of a larger pattern and practice. Plaintiffs believe that Defendant utilized their confidential, proprietary and, in some instances, trade secret information to solicit and procure business for Defendant's sole benefit and at Plaintiffs' detriment.

57.    The disclosures made by Defendant were deliberate, brazen, willful, malicious and without notice, consent or authorization and in complete disregard of Plaintiffs' rights and Defendant's contractual and legal obligations. The disclosures

/ / /

have provided an unwarranted benefit to Defendant, which occurred without the provision of consideration to Plaintiffs; further, Defendant's actions resulted in giving an unfair competitive advantage to Plaintiffs' competitors, thereby undermining Plaintiffs' economic interests, which has caused harm.

58.     Plaintiffs are informed and believe that Defendant has disclosed the confidential and proprietary information belonging to other customers to competitors and other third parties, with the same disregard of the rights of Defendant's other clients as Defendant has demonstrated toward Plaintiffs.

59.     Defendant's conduct constitutes impermissible infringements on Plaintiffs' intellectual property rights, misappropriation of trade secret and breaches of the parties' written Agreements, each of which require Defendant not to disclose Plaintiffs' confidential and proprietary information to any third party without Plaintiffs' prior authorization.

60.     As a proximate result of Defendant's unlawful conduct including Defendant's misappropriation of trade secret, Plaintiffs have suffered losses including actual damages as measured by the Defendant's revenue and the profits Defendant generated from the service agreements paid for by Plaintiffs and the third parties to which the unlawful disclosures were made, lost profits from the unauthorized use by others of Plaintiffs' intellectual property, loss of the reasonable royalties and license fees for Defendant's multiple and unauthorized disclosures/uses of Plaintiffs' intellectual property and trade secret, damages that are presumed from the misappropriation; and, attorneys' fees and costs. Plaintiffs believe Defendant's conduct is ongoing. To that end, injunctive relief is necessary.

/ / /

/ / /

/ / /

/ / /

/ / /

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## COUNT I - VIOLATION OF DEFEND TRADE SECRETS ACT

### (18 U.S.C. § 1836, *et seq.*)

### (By GA Telesis Against Defendant)

61.     GA Telesis incorporates all of the above paragraphs as though fully set forth herein.

62.     GA Telesis owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.

63.     Following years of research and development, GA Telesis successfully created the GATES Production System for use in MRO operations of integrated aviation services. The GATES Production System is a method, technique and process used to provide services to aircraft lessors, air carriers and cargo operators. The benefits of the GATES Production System include increased flexibility, competitive cost efficiencies and high-quality services relative to initial inspection, disassembly, detail inspection, repair/marshalling, final assembly and preservation.

64.     The GATES Production System has been reduced to tangible medium.

65.     GA Telesis does not make its methods, techniques and processes available to competitors as they are secret; GA Telesis requires that any who have been granted access hold the information in strict confidence.

66.     The GATES Production System is a trade secret as defined by 18 U.S.C. section 1836 et seq. It derives its independent economic value from not being generally known to or readily accessible by the public.

67.     GA Telesis has undertaken reasonable efforts to maintain the secrecy of its GATES Production System. GA Telesis has at all times maintained stringent security measures to preserve the secrecy of its GATES Production System trade secrets. For example, GA Telesis restricts access to confidential and proprietary trade secret information to only those who need to know. That is, employees working on projects unrelated to MRO have not had and do not have access to GA Telesis' schematics or

/ / /

18

other categories of confidential and proprietary information have at all times required passwords for access. Computers, tablets, and cell phones provided to GA Telesis' employees are password protected, and subject to other security measures. In addition, GA Telesis secures its physical facilities by restricting access and then monitoring actual access with security cameras and guards.

68.    GA Telesis requires all employees, contractors, consultants, vendors and manufacturers to sign confidentiality agreements before any confidential or proprietary trade secret information is disclosed to them. Every outside vendor and manufacturer that has received confidential and proprietary trade secret information related to the GATES Production System has executed at least one written non-disclosure agreement. Moreover, no single vendor has full knowledge of the proprietary GATES Production System.

69.    Due to these security measures, the GA Telesis confidential and proprietary trade secret information is not available for others in the aircraft engine induction industry – or any other industry – to use through any legitimate means.

70.    GA Telesis' confidential, proprietary and trade secret information relates to its products and services used in or intended for use in interstate and foreign commerce.

71.    Defendant received information concerning GA Telesis' trade secret only after executing the Mutual Non-Disclosure Agreement, which, in addition to the Master Subscription Agreement, gave rise to Defendant's knowledge that the information was a trade secret and that Defendant was to maintain the information in strict confidence.

72.    In violation of GA Telesis' rights, Defendant misappropriated and disclosed GA Telesis' confidential, proprietary and trade secret information relating to the GATES Production System in the improper and unlawful manner as alleged herein – in a "use case" – when Defendant transmitted that information, including descriptions

/ / /

/ / /

COMPLAINT BY GA TELESIS, LLC AND CONSTANT AVIATION, LLC

56018798;1

AKERMAN LLP

601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

about GA Telesis' "use" thereof, in an attempt to gain business from GA Telesis' direct competitor, for Defendant's sole benefit.

73.    Defendant's disclosure of GA Telesis' confidential, proprietary and trade secret information was deliberate, knowing, willful, malicious, fraudulent and oppressive.

74.    GA Telesis is informed and believes, and based on that information and belief alleges, that Defendant's disclosures are not isolated incidents. GA Telesis believes that Defendant has utilized and disclosed its confidential, proprietary and trade secret information to solicit business relationships for the benefit of Defendant and GA Telesis believes that Defendant continues to do so. As a result, preliminary and permanent injunctive relief pursuant to 18 U.S.C. section 1836(b) is appropriate. GA Telesis is entitled to an order prohibiting Defendant from the use or disclosure of its trade secret information; an order prohibiting Defendant from further violating the terms of the parties' Agreements requiring Defendant to maintain GA Telesis' confidences.

75.    As a direct and proximate result of Defendant's conduct, GA Telesis has sustained injury. GA Telesis is threatened with the loss of goodwill, loss of clients, competitive advantage and devaluation in its trade secrets. GA Telesis is entitled to recovery of damages for actual loss, recovery of damages for any unjust enrichment caused by the misappropriation of trade secrets that is not addressed in computing damages for actual loss; recovery of a reasonable royalty for Defendant's unauthorized disclosure of the trade secret; and, any other remedy allowable pursuant to 18 U.S.C. 1836 subsection (b)(3)(B), all to be proven at trial, as well as an order directing Defendant to destroy all "use cases" containing GA Telesis' trade secret content.

76.    GA Telesis is informed and believes and based thereon alleges that its trade secret has been willfully and maliciously misappropriated, and GA Telesis is entitled to an award of exemplary damages of two times the damages it would otherwise be entitled

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

COMPLAINT BY GA TELESIS, LLC AND CONSTANT AVIATION, LLC

56018798;1

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1 to, pursuant to 18 U.S.C. 1836 subsection (b)(3)(C), and its attorneys' fees in

2 conjunction with this action.

3

4 **COUNT II - VIOLATION OF CAL. UNIFORM TRADE SECRET ACT**

5 **(Cal. Civ. Code § 3426 *et seq*.)**

6 **(By GA Telesis Against Defendant)**

7      77.    GA Telesis incorporates all of the above paragraphs as though fully set

8 forth herein.

9      78.    GA Telesis owns and possesses certain confidential, proprietary, and trade

10 secret information, as alleged above.

11      79.    Following years of research and development, GA Telesis successfully

12 created the GATES Production System for use in MRO operations of integrated aviation

13 services. The GATES Production System is a method, technique and process used to

14 provide services to aircraft lessors, air carriers and cargo operators. The benefits of the

15 GATES Production System include increased flexibility, competitive cost efficiencies

16 and high-quality services relative to initial inspection, disassembly, detail inspection,

17 repair/marshalling, final assembly and preservation.

18      80.    The GATES Production System has been reduced to tangible medium.

19      81.    Plaintiff does not make its methods, techniques and processes available to

20 competitors as they are secret; GA Telesis requires that any who have been granted

21 access hold the information in strict confidence.

22      82.    The GATES Production System is a trade secret as defined by Cal. Civ.

23 Code § 3426 *et seq*. It derives its independent economic value from not being generally

24 known to or readily accessible by the public.

25      83.    GA Telesis has undertaken reasonable efforts to maintain the secrecy of its

26 GATES Production System. GA Telesis has at all times maintained stringent security

27 measures to preserve the secrecy of its GATES Production System trade secrets. For

28 / / /

56018798;1

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

example, GA Telesis restricts access to confidential and proprietary trade secret information to only those who need to know. That is, employees working on projects unrelated to MRO have not had and do not have access to GA Telesis' schematics or other categories of confidential and proprietary information have at all times required passwords for access. Computers, tablets, and cell phones provided to GA Telesis' employees are password protected, and subject to other security measures. In addition, GA Telesis secures its physical facilities by restricting access and then monitoring actual access with security cameras and guards.

84.    GA Telesis requires all employees, contractors, consultants, vendors and manufacturers to sign confidentiality agreements before any confidential or proprietary trade secret information is disclosed to them. Every outside vendor and manufacturer that has received confidential and proprietary trade secret information related to the GATES Production System has executed at least one written non-disclosure agreement.

Moreover, no single vendor has full knowledge of the proprietary GATES Production System.

85.    Due to these security measures, the GA Telesis confidential and proprietary trade secret information is not available for others in the aircraft engine MRO industry – or any other industry – to use through any legitimate means.

86.    GA Telesis' confidential, proprietary and trade secret information relates to products and services used in or intended for use in interstate and foreign commerce.

87.    Defendant received information concerning GA Telesis' trade secret only after executing the Mutual Non-Disclosure Agreement, which, in addition to the Master Subscription Agreement, gave rise to Defendant's knowledge that the information was a trade secret and that Defendant was to maintain the information in strict confidence.

88.    In violation of GA Telesis' rights, Defendant misappropriated and disclosed GA Telesis' confidential, proprietary and trade secret information relating to the GATES Production System in the improper and unlawful manner as alleged herein

/ / /

– in a "use case" – when Defendant transmitted that information, including descriptions about GA Telesis' "use" thereof, in an attempt to gain business from GA Telesis' direct competitor, for Defendant's sole benefit.

89.   Defendant knew or should have known under the circumstances that the information misappropriated by Defendant regarding the GATES Production System were trade secrets.

90.   Defendant's disclosure of GA Telesis' confidential, proprietary and trade secret information was deliberate, knowing, willful, malicious, fraudulent and oppressive.

91.   GA Telesis is informed and believes and based on that information and belief alleges that Defendant's disclosures are not isolated incidents. GA Telesis believes that Defendant has utilized and disclosed its confidential, proprietary and trade secret information to solicit business relationships for the benefit of Defendant and GA Telesis believes that Defendant continues to do so. As a result, preliminary and permanent injunctive relief is appropriate pursuant to Cal. Civ. Code § 3426.2. GA Telesis is entitled to an order prohibiting Defendant from the use or disclosure of its trade secret information; an order prohibiting Defendant from further violating the terms of the parties' agreements requiring Defendant to maintain GA Telesis' confidences.

92.   Defendant's misappropriation of GA Telesis' confidential, proprietary and trade secret information was deliberate, knowing, willful, malicious, fraudulent and oppressive.

As a direct and proximate result of Defendant's conduct, GA Telesis has sustained injury. GA Telesis is threatened with the loss of goodwill, loss of clients, competitive advantage and devaluation in its trade secrets. GA Telesis is entitled to recovery of damages for actual loss, recovery of damages for any unjust enrichment caused by the misappropriation of trade secrets that is not addressed in computing damages for actual

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56018798;1

loss; recovery of a reasonable royalty for Defendant's unauthorized disclosure of the trade secret; and, any other remedy allowable pursuant to California Uniform Trade Secrets Act, all to be proven at trial, as well as an order directing Defendant to destroy all "use cases" containing GA Telesis' trade secret content.

93.     GA Telesis is informed and believes and based thereon alleges that its trade secret has been willfully and maliciously misappropriated, and GA Telesis is entitled to an award of exemplary damages of two times the damages it would otherwise be entitled to, and its attorneys' fees in conjunction with this action pursuant to the California Uniform Trade Secrets Act.

## COUNT III - BREACH OF CONTRACT
### (By GA Telesis Against Defendant)

94.     GA Telesis incorporates all of the above paragraphs as though fully set forth herein.

95.     On or about August 10, 2017, GA Telesis and Defendant entered into a written Mutual Non-Disclosure Agreement, a copy of which is attached as Exhibit A.

96.     Pursuant to the terms of the Mutual Non-Disclosure Agreement, the parties agreed, *inter alia*, that the following terms would govern the handling of each other's confidential information:

> **2.     Non-Use and Nondisclosure Obligations.  Recipient shall not, in any way, use or disclose any Confidential Information of Discloser except** as necessary in connection with the Business Purpose or **with Discloser's prior written consent.**  Recipient shall not reverse engineer, disassemble or decompile any software or tangible objects embodying any Confidential Information of Discloser. **Recipient shall not disclose or otherwise make available any Confidential Information of Discloser to anyone** except those of its employees, attorneys, agents and consultants who need to know the Confidential Information in connection with the Business Purpose and who have previously agreed to be bound by confidentiality obligations no less stringent than

56018798;1

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

those in this Agreement. **Each party shall safeguard all Confidential Information of the other party with at least the same degree of care (but no less than reasonable care) as it uses to safeguard its own Confidential Information of like kind.** Neither party shall disclose any information to the other party in violation of any confidentiality obligations to, or proprietary rights of, any third party. **Recipient's obligations under this Agreement with respect to any Confidential Information shall remain in effect (a) in the case of Confidential Information which constitutes a trade secret** within the meaning of applicable law, for as long as such Confidential Information remains a trade secret, or (b) for five (5) years from the date it first received such Confidential Information hereunder. (Emphasis added)

97.     On or about October 5, 2017, GA Telesis and Defendant entered into a Master Subscription Agreement. A copy of the Master Subscription Agreement is attached as Exhibit B.

98.     Pursuant to the terms of the Master Subscription Agreement, Defendant agreed, inter alia, to protect GA Telesis' confidential and proprietary information and agreed not to provide it to any third-party unless compelled by law to do so or unless authorized by GA Telesis to do so. Specifically, Defendant agreed:

> **2.2    Protection of Customer Data. [salesforce.com, inc.] will maintain administrative, physical, and technical safeguards for protection of the security, confidentiality and integrity of Customer Data,** as described in the Documentation. Those safeguards will include, but will not be limited to, measures for preventing access, use, modification or disclosure of Customer Data by [salesforce.com, inc.] personnel except (a) to provide the Services and prevent or address service or technical problems, (b) as compelled by law in accordance with the "Confidentiality: Compelled Disclosure" section below, or (c) as expressly permitted in writing by Customer. The terms of the data processing addendum at http://www.sfdcstatic.com/assets/pdf/misc/data-processing-addendum.pdf ("**DPA**") are hereby

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

25

56018798;1

incorporated by reference and shall apply to the extent Customer Data includes Personal Data, as defined in the DPA. To the extent Personal Data from the European Economic Area (EEA) and Switzerland are processed by [salesforce.com, inc.], its Processor Binding Corporate Rule and/or the Standard Contractual Clauses, Customer and its applicable Affiliates are each the data exporter, and Customer's execution of this Agreement, and an applicable Affiliate's execution of an Order Form, shall be treated as its execution of the Standard Contractual Clauses and appendices.

…

**7.2**   **Protection of Confidential Information. The Receiving Party will use the same degree of care that it uses to protect the confidentiality of its own confidential information of like kind (but not less than reasonable care) to** (i) not use any Confidential Information of the Disclosing Party for any purpose outside the scope of this Agreement and (ii) except as otherwise authorized by the Disclosing Party in writing, **limit access to Confidential Information of the Disclosing Party** to those of its and its Affiliates' employees and contractors who need that access for purposes consistent with this Agreement and who have signed confidentiality agreements with the Receiving Party containing protections not materially less protective of the Confidential Information than those herein. Neither party will disclose the terms of this Agreement or any Order Form to any third party other than its Affiliates, legal counsel and accountants without the other party's prior written consent, provided that a party that makes any such disclosure to its Affiliate, legal counsel or accounts will remain responsible for such Affiliate's, legal counsel's or accountant's compliance with this "Confidentiality" section. (Emphasis added)

/ / /

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

99.     On or about October 30, 2019, Defendant breached the terms of the parties' Agreements when Defendant transmitted to Barfield, Inc., a direct competitor of GA Telesis, descriptions of and links to GA Telesis' confidential and proprietary information as well as trade secret information pertaining to the GATES Production System.

100.     Specifically, in a nearly two-page email, Defendant transmitted Barfield, Inc. descriptions of and links to Plaintiffs' confidential and proprietary information referring to multiple "use cases," as well as aspects of trade secret information regarding the GATES Production System. In that email, Defendant wrote:

> … we are including a link to a relevant MRO video along with GA Telesis and Constant Aviation use cases which you may find directly relevant. There are more use cases available, but we are not allowed to use their names. (Email from Salesforce Account Executive to Barfield, Inc., dated October 30, 2019, Subject: Salesforce – Barfield: Follow Up).

101.     The nearly two-page email includes an acknowledgment that Defendant had no right to make the disclosures.

102.     Defendant's conduct occurred absent authorization and in contravention to the terms of the Master Subscription Agreement and the Mutual Non-Disclosure Agreement. Both the Master Subscription Agreement and the Mutual Non-Disclosure Agreement require Defendant to safeguard not only trade secrets but also any and all confidential and proprietary information as those terms are used within those agreements. Defendant breached the Agreements and is liable for such breaches because it improperly disclosed GA Telesis' confidential and proprietary information in addition to its trade secrets information.

/ / /

/ / /

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

103.   The Master Subscription Agreement at Clauses 2.1, 2.2 and 7.2 specifically provide that the Defendant will not disclose its client's proprietary and confidential information to anyone.

104.   Section 7.5 of the Mutual Non-Disclosure Agreement provides:

> The parties acknowledge that a breach of any of the provisions contained in this Agreement may result in irreparable and continuing harm for which there will be no adequate remedy at law and that the non-breaching party shall be entitled to seek injunctive relief and/or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate).

GA Telesis performed all of its obligations, conditions, covenants and promises set forth under the Master Subscription Agreement and the Mutual Non-Disclosure Agreement, except for those obligations that it was prevented or excused from performing.

105.   GA Telesis suffered damages legally caused by Defendant's material breach of the Mutual Non-Disclosure Agreement and the Master Subscription Agreement, which were within the contemplation of the parties when the Agreements were entered into and reasonably foreseeable by them at that time.

106.   As a direct and proximate result of Defendant's conduct, GA Telesis has suffered damages. Defendant's breach of the Master Subscription Agreement and the Mutual Non-Disclosure Agreement was a substantial factor in causing Plaintiffs' damages.

107.   GA Telesis is entitled to an award of compensatory damages as well as costs of suit and attorney's fees, the value of the loss of competitive advantage as a result of the unlawful publication of GA Telesis' confidential and proprietary information, Defendant's revenue and the profits Defendant generated from the service

/ / /

agreements paid for by GA Telesis and the third-party to which the unlawful disclosures were made, Defendant's unjust enrichment to the extent not already provided for, the loss of the reasonable royalties for Defendant's multiple and unauthorized disclosures of GA Telesis' intellectual property to the extent not otherwise provided for, each to be proven at trial.

108.   GA Telesis has been, and will continue to be, damaged by each of Defendant's breaches of agreements and GA Telesis is entitled to all recoverable damages in an amount to be proven at the time of trial.

## COUNT IV - BREACH OF CONTRACT
### (By Constant Against Defendant)

109.   Constant incorporates all of the above paragraphs as though fully set forth herein.

110.   On or about March 31, 2017, Constant and Defendant entered into a Master Subscription Agreement for the term April 1, 2017 through December 31, 2019. Attached hereto as Exhibit C is a true and correct copy of the electronic order form signed by Constant binding it to the terms of Defendant's Master Subscription Agreement, as indicated on page 5 providing, "This Order Form is governed by the terms of the salesforce.com Master Subscription Agreement found at https://www.salesforce.com/company/msa.jsp."

111.   Defendant agreed, *inter alia*, to protect Constant's confidential and proprietary information and agreed not to provide it to any third-party unless compelled by law to do so or unless authorized by Constant to do so. Specifically, Defendant agreed:

> 2.2   **Protection of Customer Data. [salesforce.com, inc.] will maintain** appropriate administrative, physical, and technical **safeguards for protection of the security, confidentiality and integrity of Customer Data,** as described in the Documentation. Those

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

safeguards will include, but will not be limited to, measures designed to prevent unauthorized access to or disclosure of Customer Data (other than by Customer or Users). Except with respect to a free trial, the terms of the data processing addendum at https://www.salesforce.com/company/legal/agreements.jsp ("DPA") are hereby incorporated by reference and shall apply to the extent Customer Data includes Personal Data, as defined in the DPA. To the extent Personal Data from the European Economic Area (EEA), the United Kingdom and Switzerland are processed by [salesforce.com, inc.], its Processor Binding Corporate Rules, the EU-US and/or Swiss-US Privacy Shield, and/or the Standard Contractual Clauses shall apply, as further set forth in the DPA. For the purposes of the Standard Contractual Clauses, Customer and its applicable Affiliates are each the data exporter, and Customer's acceptance of this Agreement, and an applicable Affiliate's execution of an Order Form, shall be treated as its effective date of termination or expiration of this Agreement, [salesforce.com, inc.] will make Customer Data available to Customer for export or download as provided in the Documentation.

…

7.2    **Protection of Confidential Information. As between the parties, each party retains all ownership rights in and to its Confidential Information. The Receiving Party will use the same degree of care that it uses to protect the confidentiality of its own confidential information of like kind (but not less than reasonable care) to (i) not use any Confidential Information of the Disclosing Party for any purpose outside the scope of this Agreement and (ii) except as otherwise authorized by the Disclosing Party in writing, limit access to Confidential Information of the Disclosing Party** to those of its and its Affiliates' employees and contractors who need that access for purposes consistent with this Agreement and who have signed confidentiality agreements with the Receiving

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56018798;1

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Party containing protections not materially less protective of the Confidential Information than those herein. Neither party will disclose the terms of this Agreement or any Order Form to any third party other than its Affiliates, legal counsel and accountants without the other party's prior written consent, provided that a party that makes any such disclosure to its Affiliate, legal counsel or accountants will remain responsible for such Affiliate's, legal counsel's or accountant's compliance with this "Confidentiality" section. […](Emphasis added)

112.   On or about October 22, 2019 and again on October 30, 2019, Defendant breached the Master Subscription Agreement by giving to Constant's direct competitors Constant's confidential and proprietary intellectual property as described within this Complaint, in an attempt to gain business from the competitors for Defendant's benefit. The instances of which Constant is aware occurred separately and involve the disclosures of different information to multiple competitors.

113.   The disclosures occurred absent authorization and in contravention to the terms of the Master Subscription Agreement. The Master Subscription Agreement at Clauses 2.1, 2.2 and 7.2 specifically provide that the Defendant will not disclose Plaintiffs' proprietary and confidential information to anyone.

114.   Constant performed all of its obligations, conditions, covenants and promises set forth under the Master Subscription Agreement, except for those obligations that they were prevented or excused from performing.

115.   Constant suffered damages legally caused by Defendant's material breaches of the Master Subscription Agreement, which was within the contemplation of the parties when the agreements were entered into and reasonably foreseeable by them at that time.

/ / /

/ / /

/ / /

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

116.   As a direct and proximate result of Defendant's conduct, Constant has suffered damages. Defendant's breach was a substantial factor in causing Constant's damages.

117.   Constant is entitled to an award of compensatory damages as well as costs of suit and attorney's fees, the value of the loss of competitive advantage as a result of the unlawful publication of Constant's confidential and proprietary trade secret and other information, Defendant's revenue and the profits Defendant generated from the service agreements paid for by Constant and the third-parties to which the unlawful disclosures were made, Defendant's unjust enrichment to the extent not already provided for, the loss of the reasonable royalties for Defendant's unauthorized disclosures of Constant's intellectual property to the extent not otherwise provided for, each to be proven at trial. Constant has been, and will continue to be, damaged by each of Defendant's breaches of contract and is entitled to all recoverable damages in an amount to be proven at the time of trial.

## COUNT V - UNFAIR COMPETITION

### (Lanham Act §43(a))

### (By Constant Against Defendant)

118.   Constant incorporates all of the above paragraphs as though fully set forth herein.

119.   Constant is the owner of Registration Number 5426750 for the design and word mark "CARE" in block letters under six lines that are slightly arced and are thickest at the left edge, becoming thinner and ending in a point at the right edge. The design and work mark bears the registration date of March 20, 2018, and appears on the principal register. Constant has used the mark in commerce continuously. Attached hereto as Exhibit D is a true and correct copy of the Trademark registration certificate.

/ / /

/ / /

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

120.   Constant is the owner of Registration Number 5396452 for the word mark "CARE." The word mark bears the registration date of February 6, 2018 and appears on the principal register. Constant has used the mark in commerce continuously. Attached hereto as Exhibit E is a true and correct copy of the Trademark registration certificate.

121.   Constant is the owner of all unregistered marks associated with Constant, including but not limited to its trade name and logo, having undertaken no acts to abandon or waive such rights. Constant's marks are distinctive to both the consuming public generally and specifically within the aviation and airline industries.

122.   As a result of Constant's continuous and exclusive use of Constant's registered and unregistered marks to identify Constant's services, Constant owns valid and subsisting federal statutory and common law rights to and in its trademarks and service marks.

123.   No trademark or service mark licenses exist between the parties to this lawsuit.

124.   Constant has standing to assert the allegations made herein because Constant is engaged in interstate commerce, Defendant's actions have been undertaken in interstate commerce, Defendant's actions have been undertaken in interstate commerce; further, Defendant's actions have injured and are likely to injure Constant's commercial interests.

125.   Defendant has engaged in unfair competition, which is prohibited under Section 43(a)(1)(A) and Section 43(a)(1)(B) of the Lanham Act.

126.   Absent authorization, Defendant created "use cases" as a method of showing potential purchasers examples of the purported "successful" implementation of Defendant's products and services. Defendant's presentation of the "use cases" to potential purchasers of its products and services constitutes the publication of

/ / /

/ / /

advertisements, which, on information and belief, Constant alleges to have been transmitted multiple times in the aviation and airline industries.

127.   However, the advertisements, or "use cases," contained information that Defendant knew to be false both when Defendant created them and when Defendant published and distributed them. Specifically, the "use cases" indicate that Defendant's clients are using certain products and services that those clients are not actually using. In addition, the "use cases" indicate that the utilization of Defendant's products and services have been successfully implemented leading to positive and quantifiable results, which is not true. Further, the "use cases" contain the tradenames, logos and registered and unregistered marks of Defendant's clients, which leads the recipient of the "use cases" to believe the information contained therein is not only accurate but that the disclosure of the information has been authorized, sponsored or endorsed by Defendant's clients, which is also not true. The deception is material because it is likely to influence purchasing decisions.

128.   Since Defendant creates each "use case", Defendant knows the false information contained therein, knows that Defendant lacks authorization to display its clients' information in the manner presented, and knows that recipients of the "use cases" will be left with the false impression that the "use cases" are accurate, authorized, sponsored and/or endorsed.

129.   Moreover, since Defendant does not share the "use cases" with the clients on whose businesses the "use cases" are based, those clients – here, Constant – could not have known to protect itself from Defendant's deceptive and misleading conduct.

130.   On October 22, 2019, Defendant attempted to sell a new product or service to GA Telesis. In furtherance of Defendant's efforts, Defendant transmitted the following email to GA Telesis:

**Subject:** Constant Aviation Use Case

Hello! […]

/ / /

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Please let me know if I should inquirer (sic) about a visit to Constant Aviation to discuss their use case.

[Constant Aviation is] using Sales, Service and FSL in **CARE (Constant Aviation Rotable Exchange) see attached .pdf**

They are now evaluating CPQ and a community too.

[…] (Emphasis in original)

131.   Accompanying the October 22, 2019 email was a one-page .pdf document – the "Constant Aviation Use Case" – containing representations about products and services Constant used and information about the results Defendant's products and services achieved. In addition, the .pdf document used Constant's trade name, Constant's registered trademark "CARE" and portions of Constant's registered design mark all next to detailed descriptions of Constant's internal business issues.

132.   Upon receipt, GA Telesis believed it had received truthful and accurate information from Defendant about the effectiveness of Defendant's products and services as reported within the "Constant Aviation Use Case."

133.   In November 2020, Constant first learned that Defendant created a "use case" utilizing aspects of its confidential and proprietary business information and intellectual property, and then transmitted it to GA Telesis. Constant had no prior knowledge of the "use case," did not consent to its creation and did not authorize Defendant's disclosure of the information in the "use case."

134.   Upon review of the information in the "Constant Aviation Use Case," it was apparent to Constant that the information was misleading, deceptive and inaccurate as it conveyed to GA Telesis false information about the scope of products and services Constant used, and conveyed false information about the purported effectiveness of Defendant's products and services on Constant's business.

135.   On October 30, 2019, in a nearly two-page email, Defendant transmitted to a direct competitor of Constant and GA Telesis descriptions of and links to Plaintiffs'

/ / /

1  confidential and proprietary information referring to multiple "use cases," as well as
2  aspects of trade secret information regarding the GATES Production System. In that
3  email, Defendant wrote:

4  … we are including a link to a relevant MRO video along with
5  GA Telesis and Constant Aviation use cases which you may
6  find directly relevant. There are more use cases available, but
7  we are not allowed to use their names. (Email from Salesforce
8  Account Executive to Barfield, Inc., dated October 30, 2019,
9  Subject: Salesforce – Barfield: Follow Up).

10  136.  Defendant sent the email to Barfield, Inc.,  a direct competitor of both GA
11  Telesis and Constant. The nearly two-page email from Defendant to Plaintiffs' direct
12  competitor includes multiple references to Plaintiffs' confidential and proprietary
13  information as well as an acknowledgment that Defendant had no right to make the
14  disclosures.

15  137.  During all times relevant, Defendant knew that it did not have its clients'
16  authorization to create the purported "use cases," Defendant knew that its clients had
17  not utilized all of Defendant's products and services in the manner set forth in the "use
18  cases" and Defendant knew that its clients had not authorized the use of their
19  tradenames, logos, confidential or proprietary information in materials Defendant
20  sought to send to third-parties and potential purchasers of Defendant's products and
21  services.

22  138.  Constant is informed and believes and based on that information and belief
23  alleges that Defendant's use of its protected marks along with the misrepresentations of
24  material fact Defendant presented in the "use cases" as described herein are not isolated;
25  rather, they are evidence of a larger pattern and practice. Constant believes that
26  Defendant utilized its protected marks along with its confidential and proprietary
27  / / /
28  / / /

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

information, coupled with Defendant's misrepresentations of material fact to solicit and procure business for Defendant's sole benefit and at Constant's detriment

139.   Defendant has infringed Constant's protected marks as alleged herein with the intent to deceive recipients of the "use cases" into believing that products and services sold by Defendant are approved, sponsored and/or endorsed by Constant.

140.   Defendant's alleged acts of unfair competition have been committed in bad faith, with the intent to cause confusion, mistake and to deceive through the use of false advertisements that leave potential purchasers with the false impression that Constant suffered from certain issues and problems that did not exist but were presented in the "use cases" as though they did exist; and, that Constant authorized, sponsored or endorsed the information contained in the "use cases."

141.   Defendant's unauthorized uses in commerce of Constant's marks as alleged herein have presented to potential purchasers misleading descriptions and false representations of fact.

142.   Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

143.   Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Constant, to its goodwill and reputation and will continue to both damage Constant and confuse recipients of the "use cases" in the aviation and airline industries, among others, unless enjoined by this Court. Constant has no adequate remedy at law. It would be difficult to ascertain the amount of compensation that could afford Constant adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required. Constant's remedy at law is not adequate to compensate it for injuries threatened.

144.   Constant is entitled to, among other relief, an order that Defendant destroy all "use cases" referenced herein; a reasonable royalty for Defendant's unauthorized uses of its marks; an order directing and enjoining – through a preliminary and

/ / /

AKERMAN LLP
601 WEST FIFTH  STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

COMPLAINT BY GA TELESIS, LLC AND CONSTANT AVIATION, LLC
56018798;1

permanent injunction – Defendant from utilizing its marks in the manner described herein; an order directing Defendant to file with the Court a certification under oath of compliance with the injunction and/or order regarding the destruction of all "use cases"; recovery of Defendant's profits that are attributable to the "use cases" described herein; an award of actual damages, enhanced damages, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

145.   Judgment in Plaintiffs' favor and against Defendant on all Counts alleged herein;

146.   Compensatory damages, plus interest and prejudgment interest in an amount to be determined at trial;

147.   Other economic and consequential damages in an amount to be determined at trial;

148.   Punitive and exemplary damages to deter similar wrongdoings;

149.   Imposition of preliminary and permanent injunction against Defendant;

150.   Award prejudgment interest at the maximum legal rate as allowed by the law;

151.   For reasonable attorneys' fees and costs of suit incurred herein; and,

152.   For such other and further relief as the Court may deem to be just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

56018798;1

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury for all counts, claims, or issues in this action that are triable as a matter of right to a jury.


DATED: April 14, 2021                    AKERMAN LLP


                                         By: */s/ Kanika D. Corley*_____
                                               Kanika D. Corley
                                               Attorneys for Plaintiffs
                                               GA TELESIS, LLC and
                                               CONSTANT AVIATION, LLC

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**COMPLAINT BY GA TELESIS, LLC AND CONSTANT AVIATION, LLC**

56018798;1